NATIONAL COAL COMPANY v. ARTHUR WATKINS.

**Timber Man in Coal Mine whose Duty is to Keep Safe Dangerous Places, Injured by Falling Roof in Repairing Same, Assumes Risk.**

The rule that the master must exercise ordinary care to provide a reasonably safe place in which the servant is to work, does not apply to cases in which the very work that the servant is employed in doing consists of making a dangerous place safe, or in constantly changing the character of the place for safety as the work progresses. Therefore, when a timber man in a coal mine whose duty it is to repair the roof of the rooms and entries of a coal mine, and make a place safe for other employes to work in by placing timbers thereunder, and repair and keep safe the dangerous places in the mine, is notified that the roof in a certain place in the mine is in a dangerous condition, and is directed to repair the same by placing timbers there-

19   O.C.C.   Vol. 34

under with no limitation as to caution he might take for his own safety, is injured by the falling of the roof while engaged in that service, he assumes the risk and cannot recover for such injury.

[Syllabus by the court.]

ERROR to common pleas court.

*R. F. Scott,* for plaintiff in error.

*Mr. Glenn,* for defendant in error.

## NORRIS, J.

This case is here to reverse a judgment of the court of common pleas in favor of the defendant in error. Arthur Watkins brought suit against the coal company to recover damages for personal injuries sustained by him while in the employ of the company in one of its mines by the fall of slate from the roof of the mine, causing the injury complained of.

In his petition he says he was the timberman and that he was sent to this place to do certain work. He charges in his petition that at the time "in violation of its duty to provide plaintiff with a safe place to work, and to keep it safe, wrongfully, carelessly and negligently, by its said agents and servants, in authority over him, wrongfully, negligently, and carelessly directed plaintiff to enter into and engage at work in an unsafe and dangerous place, at a point about fifteen feet from the entrance to the entry known as entry number two, off entry number ten east. Said place was unsafe and dangerous in this: said defendant unlawfully, wrongfully, negligently and carelessly permitted a large amount of slate from the roof of said mine, and of waste and refuse from coal to be deposited theretofore, and to remain in said place at said time, and failed and neglected to make the roof thereover safe and secure by placing timbers to sustain said roof as the coal was removed, and failed to take down and remove the loose slate, and the slate about to become loosened, and thereby rendered said place dangerous and unsafe, and failed and neglected to properly and carefully inspect the roof to said mine at said place; and failed and neglected to take ordinary and proper care for defendant's safety, but, on the contrary, said defendant, by its said agents and servants in authority over said plaintiff, carelessly and

National Coal Co. v. Watkins.

negligently pretended to inspect said roof, and carelessly and negligently informed plaintiff that said place was a safe place to work and that there was no danger of a fall of slate.''

An answer was filed which denied every charge of negligence, and for a second defense alleges that the plaintiff himself under his employment, on April 5, 1911, and for a long time prior thereto, was required to repair and keep safe the defective and dangerous places in said mine; that he was sent to this place and was informed that the roof thereof, as described in the petition, was loose and dangerous and he was directed to repair the same. The only error complained of in this record is that the verdict is against the weight of the evidence. We have read all of the testimony. The record is not long and it appears that on this day the plaintiff went to this place, perhaps by direction of the foreman of the mine, to repair the roof that was stated to be in a dangerous condition and in need of being timbered for the purpose of making it safe.

The placing of timbers in this mine was the duty of this plaintiff. He was employed for that purpose. Whenever it was necessary to have timbers placed in any room or entry in the mine, he was one of the men employed for the purpose of putting those timbers in and making the roof and various places safe. That was his duty. That was what he was employed to do in that mine, and in that business, it is assumed, he was an experienced man.

Now, in this testimony there was very little conflict in the statement by the plaintiff and witnesses he produced and the foreman as to what occurred, and, taking the most favorable view for the plaintiff, he was directed to go to this particular place to fix the roof of this mine and to support it by placing timbers there. When he reached this place some of the men with him told him that the boss had been there and directed him to make a cut in the side, I believe what we call a rib, for the purpose of putting timber therein to support the roof at that place. Both plaintiff and the witness Smith, who was there, testified as to what occurred, and when he went there he knew or had been informed that the roof of the mine was dangerous,

.and the only reason for his going there to put the timbers in was because of that, that it needed timbers to make it safe.

Now, he was given outside of this one direction, no orders .as to how he should proceed and what he was to do with reference to protecting himself in this mine, nor with reference to the manner of pursuing this work and making this place in the mines a safe place in which to work. It was the duty of the mine boss, imposed by statute, to see that the roof was made safe and some person must be employed to perform that work. It necessarily may be a dangerous work, but it is work that must be done in the mine and somebody is employed to do it, and the question arises wherein was there negligence on the part of the foreman with reference to sending this man to do this work at this particular place?

It is testified by Mr. Smith that when the plaintiff came there he suggested that they put a post up in the center to protect the roof until they could get this work done that they had been directed to do. Both Mr. Smith and the plaintiff as the testimony shows, tested the roof of this mine at this particular place to see whether it was at that time in a dangerous and unsafe condition, and that both apparently reached the conclusion that it was safe for the time being, sufficiently so that they might proceed with the work in hand without putting this post in the center while they were pursuing the work they were directed to do at that particular place.

Now, what is the rule of law applicable to a situation of this kind? Does the same strict rule apply with reference to providing a safe place for a person who is sent, who is employed to make places that are unsafe safe, and is directed by his employer to go to a certain place to make the particular locality safe for other people pursuing their work?

Stated in Thompson, Negligence Sec. 3877, speaking of this rule as to the requirement of the master to make the place safe:

"Nor does the rule under consideration apply to cases in which the very work the servants are employed to do consists in

National Coal Co. v. Watkins.

making a dangerous place safe or in constantly changing the character of the place for safety as the work progresses.''

Again, Thompson, Negligence Sec. 4705:

''The rule that the master must exercise, ordinary care to provide a reasonably safe place in which the servant is to work, does not apply to cases in which the very work which the servant is employed to do consists in making a dangerous place safe, or in constantly changing the character of the place for safety as the work progresses. On the other hand, the very nature of such work conveys to the servant an obvious suggestion of peculiar danger, and charges him with an assumption of the ordinary risks attendant upon the service in which he is engaged.''

Now, that the plaintiff understood this rule is shown by his testimony when he is examined as to what Smith said to him about putting a prop in there to protect him at the work in which they were engaged. The question is, ''And you paid no attention to these other men around? A. How do you mean that? Q. That is, you didn't care whether they were working under loose slate or not?'' His answer was, ''Every man is supposed when he is in there to look after himself.'' He understood the duty that was imposed upon him and others working in this mine. That was known by all the employes to be an unsafe place by reason of the roof being unsafe and this man had known it. There were plenty of timbers if the plaintiff had seen fit to use them, and it seems from this testimony that if it were necessary, or he deemed it necessary in pursuing that work of timbering that peculiar locality to put temporary props under that roof it was his duty without direction from anybody to put that timber in place, and he so understood it because apparently there was some discussion, at least Smith says so, as to whether they should put in temporary props to protect the roof in this mine while they were cutting these places out; and taking the most favorable view of the record and testimony on the part of the plaintiff we are unable to say that the verdict of this jury is not manifestly against the weight of the testimony.

Another question as to this slate that was located on the side of the room. It does not appear from the testimony that this was the approximate cause of this injury. It certainly did not have anything to do with the roof falling. Recently there had been a large fall of slate from this roof and some of the workmen were there engaged in piling it up, the "gob" I believe they call it, being removed for the purpose of cleaning it up. There is not any testimony showing that this slate had been there any length of time; that the company had had opportunity to remove it if it were necessary to do so. An unfortunate accident, but is defendant liable under the law?

We have examined all the' testimony in this case as carefully as we could in the light of the law and it seems to us that this verdict is manifestly against the weight of the evidence, and for that reason the judgment of the common pleas court will be reversed and the cause remanded.

**Metcalfe** and **Pollock, JJ.,** concur.

---

## ARREST—CONCEALED WEAPONS.

[Ashtabula (7th) Court of Appeals, December 11, 1913.]

Metcalfe, Norris and Pollock, JJ.

JOHN RASEY, ET AL. V. VIRGINIA CICCOLONO, ADMRX.

**1. Police Officer without Warrant not Authorized to Arrest Person Peaceably Passing along Highway.**

**2. Nor to Search Persons without Arrest or Reasonable Grounds for Arrest.**

A police officer has no authority to search a person passing peaceably along a highway of a municipality until he has placed such person under arrest, and the circumstances must be such as to give reasonable and probable grounds to justify such arrest.

[Syllabus by the court.]